IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO B. MOSQUERA,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN RANGE ASSOCIATION, an unincorporated association, and BEN ANSOLABEHERE SHEEP COMPANY, a corporation, and BEN ANSOLABEHERE,<br><br>Defendants. | CV F 01-5049 AWI DLB<br><br>MEMORANDUM OPINION AND ORDER RE MOTION TO DISMISS THIRD AMENDED COMPLAINT |

This is a civil action for money damages in which Plaintiff alleges a violation of 42 U.S.C. Section 2000e, a violation of California Government Code Section 12940(a), breach of contract, and a violation of California Business and Professions Code Section 17200. Pending before the court is Defendant Western Range Association's ("WRA") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, and, alternatively, motion for more definite statement, pursuant to Rule 12(b)(1), 12(b)(6), and 12 (e), Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY

Plaintiff filed his original complaint in this action on January 16, 2001, and filed a first amended complaint on May 30, 2001. WRA filed an answer to the first amended



complaint on June 26, 2001. On June 28, 2001, Defendants Ansolabehere Sheep Company and Ben Ansolabehere filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

On October 30, 2001, the court entered a memorandum opinion and order in which it concluded that it lacked federal question subject matter jurisdiction over this action. It granted Plaintiff twenty days within which to amend his complaint only as to the amount in controversy and ruled that after the amendment it would consider the remainder of Defendants' motion to dismiss filed June 28, 2001.

Plaintiff filed a second amended complaint on November 16, 2001. On December 10, 2001, WRA filed a motion to strike portions of the second amended complaint pursuant to Rule 12(f), Federal Rules of Civil Procedure. Plaintiff opposed the motion. On January 24, 2002, the court entered an order granting the motion to strike.

On February 14, 2002, WRA filed an answer to Plaintiff's second amended complaint. On February 15, 2002, the court issued a memorandum opinion and order granting in part and denying in part Defendants' motion to dismiss. On February 25, 2002, Defendant Ansolabehere Sheep Company filed an answer to Plaintiff's second amended complaint. On May 20, 2002, the court held a scheduling conference. Because the parties indicated at the conference that they were unable to reach a stipulation regarding the filing of a third amended complaint, Plaintiff was directed to file a motion for leave to file a third amended complaint.

The court heard the motion for leave to file a third amended complaint on July 12, 2002, and on July 22, 2002, issued an order granting in part and denying in part Plaintiff's motion. As to Government Code section 12940(a) and (h) claims, the court denied leave to amend to add the claims against Mr. Ben Ansolabehere in his individual capacity because Plaintiff failed to demonstrate that he named Mr. Ansolabehere in his administrative action. The court granted Plaintiff leave to add a 42 U.S.C. section 2000e claim against WRA

because of its failure to file any opposition to the motion. The court granted Plaintiff's motion to add a breach of contract claim against Mr. Ansolabehere in his individual capacity on the ground that the Sheepherder Employment Agreement identified Mr. Ansolabehere as the employer and the allegations contained in the proposed complaint stated a claim.

On August 9, 2002, Plaintiff filed a motion for reconsideration of the court's order issued July 22, 2002, with regard to the Government Code sections. On September 13, 2002, Magistrate Judge Beck issued an order denying Plaintiff's motion for reconsideration of the court's order of July 22, 2002. On November 6, 2002, the undersigned entered an order denying Plaintiff's motion for reconsideration of Magistrate Judge Beck's order of September 13, 2002.

On December 5, 2002, WRA filed the motion to dismiss now pending before the court. Plaintiff opposes the motion. The court took the matter under submission on the papers on January 6, 2003.

**LEGAL STANDARD**

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). Absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996).

3

When a defendant challenges the legal sufficiency of a complaint, the court's review is limited to the complaint. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir.1993). As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). If the parties present the court with evidence outside the pleadings and the court considers the evidence, the court must converting the Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932, 934-35 (9th Cir.1996). The Ninth Circuit has explained as follows:

> As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Branch, 14 F.3d at 453 (citation omitted). Rule 12(b)(6) expressly provides that when: matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(b)(6) (emphasis added). There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion. First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. Branch, 14 F.3d at 453 (citation omitted). If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir.1998). Second, under Fed.R.Evid. 201, a court may take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986). We review a district court's decision to take judicial notice for abuse of discretion. Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458 (9th Cir.1995).

Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

## DISCUSSION

### Employment Discrimination Claims

In its motion to dismiss, WSR contends that Plaintiff has failed to state a claim for a violation of either 42 U.S.C. Section 2000e or Government Code Section 12940(a). In his first claim for relief, Plaintiff alleges that WSR violated 42 U.S.C. Section 2000e by denying him equal terms, conditions and privileges of employment by subjecting him to

4

discriminatory treatment based on his national origin. In his second claim for relief, Plaintiff alleges that both WSR and Ansolabehere Sheep Company violated Government Code Section 12940(a) by denying him equal terms, conditions and privileges of employment by subjecting him to discriminatory treatment based on his national origin and/or ancestry. WSR contends that Plaintiff has failed to state a claim under either of these statutes because WSR was not Plaintiff's employer.

The Civil Rights Act of 1964, 42 U.S.C. Section 2000e, provides in part as follows (emphasis added):

> It shall be an unlawful employment practice for an <u>employer</u>–
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

Government Code Section 12940 provides in part as follows (emphasis added):

> It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
> (a) For an <u>employer</u>, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

In the present case, WRA contends that the Sheepherder Agreement makes it clear that Ben Ansolabehere was Plaintiff's employer, obligating him to pay wages, provide insurance, and guarantee a certain amount of work, while also allowing him to designate certain terms of employment. The Agreement specifically states initially as follows:

> This Sheepherder Agreement this 10th day of October 1996, between WESTERN RANGE ASSOCIATION a California corporation, having a principal place of business at 6060 Sunrise Vista Drive, Suite 2400, Citrus Heights, CA 95610, hereinafter referred to as the "Association", and Ben Ansolabehere, a member of WESTERN RANGE ASSOCIATION, hereinafter referred to as the "Employer" and Lorenzo MOSQUERA Bernache #73939 New Arrival, hereinafter referred to as the "Employee".

5

Declaration of John F. Petrini, Exhibit B, page 1. The Sheepherder Agreement further provides: , "[t]he Employer hereby employs the Employee and the Employee hereby accepts employment as a sheepherder with the Employer." Id.

WRA argues that one important indicator of the identity of Plaintiff's employer is the identity of the entity that controls the day-to-day activities of Plaintiff. WRA cites Frank v. U.S. West, 3 Fed.3d 1357, 1363 (10th Cir., 1993), in which the employees of a telephone company's subsidiaries brought an action against the parent telephone corporation, alleging employment discrimination based on age and national origin. The district court found that the parent corporation was not employees' employer, and the Court of Appeals affirmed. The Court of Appeals stated that courts have applied four different tests to determine whether a parent corporation is liable for the acts of its subsidiary. The court applied the "integrated enterprise test" because the parties conceded that this test best applied to the facts of the case. Under the integrated enterprise test, the following four factors are considered: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Id. at 1362. In considering the second factor of "centralized control of labor relations," the court stated,

> Whether the parent controls labor relations is "an important factor" in the four-part integrated enterprise test. Evans, 936 F.2d at 1090. Cf. Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir.1983) (control of labor relations is most important factor). The critical question is, "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" Trevino, 701 F.2d at 404. A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. See Wood v. Southern Bell Tel. & Tel. Co., 725 F.Supp. 1244, 1249 (N.D.Ga.1989). To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary. See Armbruster, 711 F.2d at 1338-39 (common officer in parent and subsidiary approved all of subsidiary's hiring decisions); Baker, 560 F.2d at 392 (parent issued regimented rules regarding employment practices which subsidiaries were required to follow); Smith, 590 F.Supp. at 1208 (parent issued personnel policies, paid subsidiary's non-union employees, was listed as employer on the W-2 forms of subsidiary's non-union employees, and terminated a subsidiary employee on one occasion).

Id. at 1363.

WRA also cites Laird v. Capital Cities/ABC Inc., 68 Cal.App.4th 727, 737 - 38 (1998), in which the court held as follows:

6

An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law. Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result. (Mesler v. Bragg Management Co. (1985) 39 Cal.3d 290, 300 [216 Cal.Rptr. 443, 702 P.2d 601] [alter ego liability]; Mid-Century Ins. Co. v. Gardner (1992) 9 Cal.App.4th 1205, 1212 [11 Cal.Rptr.2d 918] [same].) In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees. (Frank v. U.S. West, Inc. (10th Cir. 1993) 3 F.3d 1357, 1362.)

The federal courts have developed a test, derived from federal labor case law, to determine whether two corporations should be considered a single employer for title VII purposes. Commonly called the "integrated enterprise" test, it has four factors: interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. [FN3] (Schweitzer v. Advanced Telemarketing Corp. (5th Cir. 1997) 104 F.3d 761, 764; Frank v. U.S. West, Inc., supra, 3 F.3d at p. 1362; Morgan v. Safeway Stores, Inc., supra, 884 F.2d at p. 1213; McKenzie v. Davenport-Harris Funeral Home (11th Cir. 1987) 834 F.2d 930, 933; Childs v. Local 18, Intern. Broth. of Elec. Wkrs. (9th Cir. 1983) 719 F.2d 1379, 1382; York v. Tennessee Crushed Stone Ass'n (6th Cir. 1982) 684 F.2d 360, 362; Mas Marques v. Digital Equipment Corp. (1st Cir. 1980) 637 F.2d 24, 27; Williams v. Evangelical Retirement Homes (8th Cir. 1979) 594 F.2d 701, 703; Baker v. Stuart Broadcasting Co. (8th Cir. 1977) 560 F.2d 389, 391-392.) This test is designed to further Congress's intent that title VII be construed liberally, including its definition of the term "employer." (Baker v. Stuart Broadcasting Co., supra, 560 F.2d at pp. 391-392.)

FN3 Contrary to Cap Cities' apparent position, the California courts have not independently promulgated an "integrated enterprise" test. Cap Cities begins its discussion of this topic by citing Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc. (1981) 116 Cal.App.3d 111 [172 Cal.Rptr. 74] as "controlling California law" and chides Laird for failing to mention it. However, the passages from this decision which Cap Cities quotes all appear in the decision under the heading "Alter Ego" (id. at pp. 119-120); the term "integrated enterprise" is not used anywhere in the decision. The other California decisions Cap Cities cites in this part of its appellate brief likewise discuss tests other than the "integrated enterprise" test. (Mesler v. Bragg Management Co., supra, 39 Cal.3d 290; Mid-Century Ins. Co. v. Gardner, supra, 9 Cal.App.4th 1205; Associated Vendors, Inc. v. Oakland Meat Co. (1962) 210 Cal.App.2d 825 [26 Cal.Rptr. 806].) We conclude that Laird is correct in her implied representation that there is no California case law on the "integrated enterprise" test.

Under this test, common ownership or control alone is never enough to establish parent liability. (Frank v. U.S. West, Inc., supra, 3 F.3d at p. 1364.) Although courts consider the four factors together, they often deem centralized control of labor relations the most important. (Schweitzer v. Advanced Telemarketing Corp., supra, 104 F.3d at p. 764; Trevino v. Celanese Corp. (5th Cir. 1983) 701 F.2d 397, 404; see Frank v. U.S. West, Inc., supra, 3 F.3d at p. 1363.) "The critical question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?' [Citation.] A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. [Citation.] To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary. [Citations.]" (Frank v. U.S. West, Inc., supra,

7

> 3 F.3d at p. 1363.)
>
> To make a sufficient showing of "interrelation of operations" on summary judgment, the plaintiff must do more than merely show that officers of the subsidiary report to the parent corporation or that the parent benefits from the subsidiary's work. Since these facts exist in every parent-subsidiary situation, such a showing would create a triable issue of material fact in every case. What the plaintiff must show, rather, is that the parent has exercised control "to a degree that exceeds the control normally exercised by a parent corporation." (Frank v. U.S. West, Inc., supra, 3 F.3d at p. 1362.)

WRA argues that paragraph 2 of the Sheepherder Agreement, entitled, "Duties of Employee" specifies that the employer, Ansolabehere, controls the day-to-day activities of Plaintiff. In addition, WRA argues that Plaintiff admitted in his deposition that Ansolabehere controlled his day-to-day activities and the only thing that WRA did was to tell Plaintiff to report to work for Ansolabehere in Bakersfield. Further, WRA argues that Ansolabehere paid all of Plaintiff's wages and WRA paid none of his wages. Furthermore, Ansolabehere was obligated to do so and in fact did provide Plaintiff with tools of the trade such as a donkey, a dog, camping equipment, eating utensils, a tent, and bedding. Finally, WRA argues that Plaintiff admitted in his deposition that Ansolabehere was his employer. Based on these arguments, WRA concludes that it cannot be considered Plaintiff's employer, and that therefore neither Section 2000e-2 nor Section 12940 can apply to it.

Separately, WRA contends that factually it did not discriminate against Plaintiff under either Section 2000e-2 or Section 12940 and that Plaintiff admitted in his deposition that WRA did not discriminate against him. Specifically, WRA argues that Paragraph D on page 4 of the Third Amended Complaint alleges that employees of Peruvian ancestry were verbally demeaned and ridiculed by Defendants and each of them, either personally or by and through their agents and employees. WRA argues that Plaintiff was read that section of the Third Amended Complaint at the time of his deposition and testified that no member of WRA ever demeaned or ridiculed him in that fashion, or in any other way. WRA also argues that in his deposition Plaintiff also acknowledged that no one who worked for WRA ever made any derogatory or insulting remarks or comments to him.

8

In opposition to the motion to dismiss, Plaintiff contends that this motion is actually a motion for summary judgment and that genuine issues of material fact exist regarding the identity of his employer which preclude the granting of summary judgment to WRA on the employment discrimination claims. Specifically, Plaintiff contends that WRA was his employer and that the actions alleged in the third amended complaint were those of WRA and the other defendants, as agents and representatives, and are discriminatory in accordance with the statutes. To support this contention, Plaintiff argues first, relying on his own deposition testimony, that he believed that WRA was his employer on the basis on what he was told and what he saw done by Defendants. Secondly, Plaintiff argues that other indicia of WRA being his employer exist, including provisions in the Sheepherder Agreement setting forth that WRA has the right to determine where the sheepherders will be assigned for herding duties among its members, WRA's maintenance of workers compensation and health insurance for the sheepherders under contract, and its maintenance of the sheepherders' U.S. Immigration I-94 exit registration cards. Plaintiff claims that these provisions demonstrate the control and involvement of WRA with the work and conditions of the sheepherders, including Plaintiff, under the employment contract.

Thirdly, Plaintiff argues that WRA has admitted to being his employer on two separate occasions. One occasion was its execution, by its agent/attorney George L. Brummer, of the Compromise and Release form for Plaintiff's workers compensation claim against it, designating the party employer as "Western Range Association dba Ansolabehere Sheep Co." The other occasion was the testimony given by its expert representative, James Holt, at the public hearing held in San Francisco, California, on October 3, 2000, before the State of California Industrial Welfare Commission. During his testimony, Mr. Holt referred to a report and explained as follows: "[i]t describes the Western Range Association structure for the use of the H-2A sheepherder program, including the particular obligations that the Western Range Association has taken on itself as part of running the sheepherder program,

such as their status as joint employers, where they are essentially guarantors of the contract terms that the individual members contract for."

Fourth and finally, Plaintiff argues that the discriminatory acts alleged in the third amended complaint are those of WRA, under an agency theory of liability See Hartong v. Partake, Inc., 266 Cal.App.2d 942 (1968); Pries v. American Indemnity Company, 220 Cal.App.3d 752 (1990). Plaintiff claims that the documents and deposition testimony submitted in reference to the present motion demonstrate that he believed that he was hired by and was working for WRA, had entered into a contract with WRA and Ben Ansolabehere, that WRA was in charge and the entity for whom he worked, but that his equipment, food, tools, transportation, and paychecks were given to him by Ansolabehere for WRA. Plaintiff claims that such evidence establishes that Ansolabehere was acting as an agent and representative of WRA in the work performed by Plaintiff. Plaintiff further claims that it was not unreasonable for him to have believed such, and to now allege this agency as the basis for liability against WRA for the acts of Ansolabehere.

The court finds that all of the evidence relied upon by the parties on this issue, while not part of the complaint, constitutes one of the two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion. See Parrino v. FHP, Inc., 146 F.3d at 705-06 ; Mack v. South Bay Beer Distrib., 798 F.2d at 1282. The court concludes, therefore, that it may properly consider this evidence without converting the motion to one for summary judgment. After considering the evidence and the arguments of the parties, the court finds that it cannot conclude that it appears beyond doubt that plaintiff can prove no set of facts in support of the claim of employment discrimination against WRA that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In particular, the court notes that the cases WRA relies on are from outside the Ninth Circuit, and discuss whether a parent corporation is liable for the acts of its subsidiary. It has not been demonstrated that such a corporate relationship exists

between Defendants in this case. Accordingly, the court will deny WRA's motion to the extent that it is addressed to the first and second claims for relief.

**Breach of Contract**

WRA moves to dismiss Plaintiff's third claim for relief for breach of contract, in which it claims that Defendants breached the portions of the Sheepherder Agreement which promised certain wages, and living conditions, along with access to medical care. WRA essentially contends that under the plain reading of the Sheepherder Agreement, it did not make any promises to Plaintiff because it is not Plaintiff's employer. This claim was addressed above in terms of the first and second claims for relief and for the reasons stated therein, the court will deny WRA's motion to dismiss as to the portions of the third claim for relief which allege a breach of contract based on the portions of the Sheepherder Agreement which promised certain wages, and living conditions, along with access to medical care.

WRA moves specifically to dismiss the portion of the third claim for relief which alleges breach of contract based on failure to provide workers' compensation insurance and benefits on two grounds. First, WRA argues that Plaintiff admitted in his responses to a Request for Admissions that he was covered by workers' compensation insurance during his employment with Ansolabehere and that the workers' compensation coverage paid benefits to or on his behalf. WRA asserts that Plaintiff has settled his workers' compensation claim for the sum of $30,000. Second, WRA argues with respect to the allegation that he was promised workers compensation benefits that the Sheepherder Agreement does not make such a promise. WRA claims that no contract could make such a promise because there are substantial prerequisites set forth in the California Labor Code which must be met before a worker is entitled to workers compensation benefits. WRA also claims that Plaintiff's exclusive remedy for a contention that workers compensation benefits are not properly paid or unreasonably delayed is provided for in the workers compensation system and a claim for breach of contract is not the proper forum for a claim for failure to pay such benefits.

11

Plaintiff provides no direct response to these arguments. Plaintiff argues, however, that WRA was his employer, was a party to the contract, and "provided the workers compensation and health insurance coverages required by the contract." Opposition, 14:10-11. The court finds that Plaintiff can prove no set of facts in support of this claim that would entitle him to relief, and that he has therefore not stated a claim against WRA for breach of contract based on failure to provide workers' compensation insurance and benefits. The court further finds that any attempt to amend would be futile. Accordingly, the court dismiss this portion of the third claim for relief with prejudice.

WRA also moves specifically to dismiss the portion of the third claim for relief which claims that Defendants breached the contract by reporting him to the Immigration and Naturalization Service ("INS"). WRA argues that the Sheepherder Agreement does not address this issue and that WRA could not promise not to report Plaintiff to the INS under certain circumstances when it is legally obligated to do so. In so arguing, WRA misstates Plaintiff's claim, which is that Defendants breached the contract by <u>falsely</u> reporting him to the INS. Accordingly, WRA's motion to dismiss as to this portion of the third claim for relief will be denied based on the mistaken description of the claim WRA seeks to dismiss.

Finally, WRA moves to dismiss the portion of the third claim for relief which claims that Defendants breached the covenant of good faith and fair dealing implied in every contract.[1] WRA argues that the prerequisite for any such breach is existence of a contractual relationship between the parties and no such relationship exists in this case between Plaintiff and WRA and the terms of the contract which he claims were breached. This is a repetition of the argument made by WRA in relation to the employment discrimination claim that WRA was not Plaintiff's employer and as with that claim, the court concludes that it cannot find that Plaintiff can prove no set of facts that would entitle him to relief on this claim.

---

[1] Although WRA states that this claim is found in paragraph 43 within the fourth claim for relief, it is actually found in paragraph 37, within the third claim for relief.

12

Accordingly, WRA's motion to dismiss will be denied as to this portion of the third claim for relief.

**Claims under California Business and Professions Code Sections 17200 and 17500**

WRA contends that Plaintiff has failed to state a claim for relief pursuant to California Business and Professions Code Sections 17200 and 17500 as set forth in the fourth claim for relief. In his fourth claim for relief, Plaintiff alleges that WRA breached the prohibitions against unfair business practices set forth in Sections 17200 and 17500 in the following ways:

1) falsely advertising, inducing and soliciting Plaintiff and other employees to work in the sheep industry without the intent to provide the benefits of employment as proclaimed by WSR;

2) inducing Plaintiff and other agricultural workers to enter into contracts of employment without the intent to comply with the terms of employment as proclaimed by WSR;

3) utilizing law enforcement agencies, including the United States Immigration and Naturalization Service, to restrain, arrest and incarcerate Plaintiff and other employees or former employees for the purpose of unlawfully or without just cause terminating the employment of Plaintiff and similarly situated workers, thereby violating their rights and wasting the resources of the government and its taxpayers or subjecting such persons to unjustified governmental intrusion into their lives;

4) refusing to provide medical treatment and worker's compensation benefits to Plaintiff and other workers similarly situated who have been injured on the job, thereby leaving them less able to compete with other persons in the general work force and subject to unlawful deportation from the United States or reliance on governmental assistance for the provision of needed medical treatment and benefits; and

5) manipulating the prices of products produced for purchase and consumption by the general public and the profits received by members of WSR by and through such acts against

13

Plaintiff and other workers similarly situated.

WRA contends that items numbers 1 and 2 above fail to state a claim because they fail to comply with the specificity requirements for pleading fraud set forth in Rule 9, Federal Rules of Civil Procedure. Plaintiff provides no response to this contention. Rule 9 provides in part as follows:

> (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

In fraud cases, "the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-1023 (9th Cir. 2000), *cert. denied*, 121 S.Ct. 1962 (2001) (fraud must be pled "with a high degree of meticulousness.") The Ninth Circuit Court of Appeals has commented:

> A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. . . . While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted).

Moreover, in fraud actions against a corporation, a plaintiff is required "to allege the names of the persons who made the allegedly fraudulent representation, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

The court finds that in this case, items one and two above fail to comply with F.R.Civ.P. 9(b)'s particularity requirement. Their fraud allegations are conclusory and without reference to particular circumstances, including the time, place and nature of alleged

fraudulent acts. The court will therefore dismiss these portions of the fourth claim for relief with leave to amend to comply with the pleading requirements of Rule 9.

WRA contends that item number 3 above fails to state a claim because it is obligated under certain conditions to report workers to the INS, arguing that its reporting of Plaintiff to the INS was not unlawful. WRA ignores the fact that in the third amended complaint, Plaintiff alleges that WRA's reporting of him to the INS was false. Such a false reporting would presumably be illegal. The court finds, therefore, that WRA has not demonstrated that Plaintiff cannot prove a set of facts which would support this claim. The court will therefore deny WRA's motion to dismiss as to this portion of the fourth claim for relief.

WRA contends that item number 4 above fails to state a claim because it had no duty to provide medical treatment or workers' compensation benefits. For the reasons set forth above, the court will deny the portion of the fourth claim for relief based on the failure to provide medical treatment and grant the portion based on the failure to provide worker's compensation benefits.

## ORDER

Based on the above, IT IS HEREBY ORDERED as follows:

1) WRA's motion to dismiss is DENIED as to the first and second claims for relief;

2) WRA's motion to dismiss is DENIED as to the portions of the third claim for relief which allege a breach of contract based on the portions of the Sheepherder Agreement which promised certain wages, and living conditions, along with access to medical care;

3) WRA's motion to dismiss is GRANTED with prejudice as to the portion of the third claim for relief which alleges breach of contract based on failure to provide workers' compensation benefits;

4) WRA's motion to dismiss is DENIED as to the portion of the third claim for relief

15

which alleges breach of contract based on reporting to the INS;

5) WRA's motion to dismiss is DENIED as to the portion of the third claim for relief which alleges breach of the covenant of good faith and fair dealing;

6) WRA's motion to dismiss is GRANTED with leave to amend as to items 1 and 2 within the fourth claim for relief;

7) WRA's motion to dismiss is DENIED as to items 3 and 4 within the fourth claim for relief;

8) Plaintiff may file an fourth amended complaint within twenty (20) days of the date of service of this order, amending his complaint only as to the fraud allegations found in items 1 and 2 within the fourth claim for relief.

9) All of the above rulings are made without prejudice to the parties' rights to file a properly noticed and documented motion for summary judgment in compliance with rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-260.

DATED: Jan. 29 2003

ANTHONY W. ISHII
UNITED STATES DISTRICT JUDGE

16

United States District Court
for the
Eastern District of California
January 30, 2003

h1

* * CERTIFICATE OF SERVICE * *

1:01-cv-05049

Mosquera

v.

Western Range Assoc

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on January 30, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Chris A. Schneider
Central California Legal Services
2014 Tulare Street
Suite 600
Fresno, CA  93721

AWI/hn    DLB/mh

Jeffrey Doyne Clason
Central California Legal Services
2014 Tulare Street
Suite 600
Fresno, CA  93721

John F Petrini
Borton Petrini and Conron
1600 Truxtun Avenue
Bakersfield, CA  93303

Francine Marie Kanne
Dowling Aaron and Keeler
6051 North Fresno Street
Suite 200
Fresno, CA  93710

By: /s/ Lopez